Gregorio **ESPINAL–GUTIERREZ,**
Petitioner,

v.

**UNITED STATES of America,**
Respondent.

Civil No. 09–2119 (DRD).
Criminal No. 08–0278(DRD).

United States District Court,
D. Puerto Rico.

May 8, 2012.

362

Gregorio Espinal–Gutierrez, Washington, MS, pro se.

Nelson J. Perez–Sosa, United States Attorneys Office, San Juan, PR, for Respondent.

## OPINION AND ORDER

DANIEL R. DOMÍNGUEZ, District Judge.

Petitioner Gregorio Espinal–Gutierrez was arrested, along with two other individuals,[1] on a vessel which was carrying substantial amounts of cocaine and an AK–47 assault rifle. The vessel was seized in U.S. waters and was bound for Puerto Rico. Petitioner was charged with one count of aiding and abetting his shipmates in knowingly and intentionally possessing with intent to distribute five hundred grams or more of a mixture or substance containing a detectable amount of cocaine; and one count of knowingly possessing a firearm during and in relations to a drug trafficking crime. All Defendants were charged identically as to these two counts.

### I. Procedural History

*A. Plea Agreement & Plea Colloquy*

The Court proceeds to summarize the salient aspects of Petitioner's plea agreement and the plea colloquy before U.S. Magistrate Judge Marcos López. In the plea colloquy, Magistrate Judge López clearly expressed to Petitioner that he was agreeing to a minimum sentence as to count one of sixty months for the substantive drug charge and a minimum sentence of sixty months as to count two for the weapons used in furtherance of the drug charge; and that these two sentences were

---

1. Co-defendant Angel Rafael Romero Santana was designated as defendant number one; co-defendant Luis A. Berroa–Santana was designated as defendant number two; and Petitioner Espinal–Gutierrez was designated as the third defendant (collectively, the "Defendants").

to be served consecutively for a total of one hundred and twenty months.

All three Defendants took the plea together as they pled to the same charges and identical potential penalties. The three Defendants were lined up in order and answered successively the questions by Magistrate Judge López (08–cr–278, Docket No. 46, page 3). Petitioner answered all the questions asked by the Magistrate Judge understandably.

Counsel Jason Gonzalez Delgado ("Delgado"), Petitioner's attorney at the time, stated at the outset of the plea colloquy that his client was competent to accept a waiver of indictment and to make a subsequent plea (08–cr–278, Docket No. 46, page 7). Petitioner answered in the affirmative as to the Magistrate's question that he had discussed all the charges with his attorney (08–cr–278, Docket No. 46, page 8). Petitioner Espinal–Gutierrez, along with the other two co-defendants, accepted that they were present at the hearing with the purpose "to plea guilty." (08–cr278, Docket No. 46, page 9). Petitioner also affirmed to the Magistrate Judge that he received "effective legal assistance" from counsel (08–cr–278, Docket No. 46, page 10).

Petitioner Espinal–Gutierrez, after receiving an explanation from Magistrate Judge López, signed a waiver of indictment (08–cr278, Docket No. 46, pages 15–16). Petitioner Espinal–Gutierrez then elected to proceed as to the plea before the Magistrate Judge as opposed to a District Court judge (08–cr–278, Docket No. 46, page 19). Attorney Delgado also stated that he duly advised Petitioner of his right to have a District Court judge preside over this plea hearing and that Petitioner's decision to proceed before a Magistrate Judge is consist with Attorney Delgado's legal advice to Petitioner (08–cr–278, Docket No. 46, pages 19–20). Petitioner was further notified of his right to a jury trial and waived those rights as well (08–cr–278, Docket No. 46, pages 22–27). Petitioner Espinal–Gutierrez was additionally advised of the consequences of pleading guilty and potentially being deported as he is an alien (08–cr–278, Docket No. 46, page 27).

Petitioner Espinal–Gutierrez stated that he signed the plea agreement and that the initials on the plea agreement were his own (08–cr–278, Docket No. 46, page 34). Attorney Delgado also stated that he translated all the terms and conditions of the plea agreement for Petitioner into his native language, Spanish (08–cr278, Docket No. 46, pages 34–35).

The three plea agreements for the three Defendants were identical in their terms and hence, the Magistrate Judge addressed all three Defendants simultaneously in his questioning about their pleas (08–cr–278, Docket No. 46, page 35). The Court asked the Assistant U.S. Attorney ("AUSA"), representing the United States, whether the plea constituted a "packaged" plea; the AUSA asserted that the pleas were indeed a packaged deal (08–cr–278, Docket No. 46, pages 35–36). The Court then proceeded to make some package plea warnings to the Defendants and advised that each defendant was to plead guilty or not guilty independently from the other codefendants' decision and pleas (08–cr–278, Docket No. 46, page 36). The Defendants acknowledged the Magistrate Judge's explanation. *Id.*

All three Defendants were asked independently as to the packaged deal by the Magistrate if they had in any way been "pressured, threatened, or coerced" by any of the other codefendants prior to entering into the plea agreement (08–cr–278, Docket No. 46, pages 36–37). Petitioner was specifically asked this question and answered in the negative (08–cr–278, Docket No. 46, page 38).

All of the Defendants accepted responsibility for aiding and abetting each other with possession with intent to distribute not less than five kilograms and not more than fifteen kilograms of cocaine on board a vessel subject to the jurisdiction of the United States under 46 U.S.C. § 70502. The District of Puerto Rico constituted the first point of entry into the United States after the commission of the offense, all in violation of 46 U.S.C. §§ 70503 and 70504 as well as 18 U.S.C. § 2 (08–cr–278, Docket No. 46, page 39). Each of the Defendants accepted that this description applied to "one of the charges" in which they pled guilty. *Id.* All of the Defendants further accepted responsibility for this charge (08–cr–278, Docket No. 46, page 40).

The plea agreement clearly reflects that Petitioner accepted responsibility for between five kilos and fifteen kilos of cocaine. He was assigned a total offense level of 25, which carries a term of imprisonment of between 57–71 months. The United States made a recommendation of sixty months for count one (08–cr–278, Docket No. 46, page 4). Defendants were advised that a guilty plea for count one carried a sentence that, by statute, is "no less than five years and not more than forty years of imprisonment; a fine of not more than $2 million; and a term of supervised release of [at] least four years." (08–cr–278, Docket No. 46, page 40).

The Magistrate Judge explained to Petitioner that count two involved the possession of a weapon, an AK–47, an assault rifle, in furtherance of a drug trafficking crime for which he could be prosecuted for within the United States. All three Defendants accepted that there were pleading to that charge. (08–cr–278, Docket No. 46, page 41). The Defendants further accepted that they each "aided and abetted" each other in knowingly possessing a firearm in relation to a drug trafficking crime. *Id.*

The Magistrate Judge additionally informed the Defendants that they were facing a term of life imprisonment, a fine not greater than $250,000 and a term of supervised release of not more than five years (08–cr–278, Docket No. 46, page 42). Each defendant stated that they understood. *Id.* The plea agreement states in relation to count two that Petitioner was facing "not less than five (5) years to run consecutive to any other sentence and a term of supervised release of at least four (4) years." (Docket No. 16, pages 2–3). The Court notes that Petitioner's initials, GEG, are contained on both pages of the plea agreement, pages two and three.

The AUSA identified that the drug amounts for which each defendant was responsible was for as between five and fifteen kilograms of cocaine, thus necessitating a sentence of sixty months for the drug charge and sixty months for the weapons charge, for a total of one hundred and twenty months. (08–cr–278, Docket No. 46, page 44). The plea agreement clearly recommends that Petitioner be sentenced to a term of sixty months for the weapons charge, count two, which is to run consecutive with an identical term for count one; thus, the plea agreement recommends that Petitioner be sentenced to a total of one hundred and twenty months (Docket No. 16, page 4). Thus, the sentence recommendation in the plea agreement and in the plea colloquy was for the lowest level as both counts involved the statutory minimum sentence of five years. Further, the Magistrate Judge informed the Defendants, and Defendants stated that they understood, that their sentences for counts one and two will be imposed to run *consecutively* with each other. The Court also informed the Defendants that they would have to pay a special monetary assessment of $100 per count and each defendant acknowledged the same (08–cr–278, Docket No. 46, page 43). Additionally, the Court

informed the Defendants that the Court was not bound by the sentence the United States recommended (08–cr–278, Docket No. 46, page 44).

The Federal Sentencing Guidelines were read to the Defendants as expressed in the plea agreement (Docket No. 16, page 4). A total offense level of twenty five applied to the Defendants as they were each held accountable for "between 5 and 15 kilograms" of cocaine. Therefore, the sentencing range was between 57 and 71 months under the Guidelines for count one, but there was an overriding statutory minimum of sixty months.

The Magistrate Judge explained the implications of the waiver of appeal contained within the plea agreement that each defendant signed. The Magistrate Judge warned that if the Court accepted the plea agreement and sentenced the Defendants according to the terms stated therein, the Defendants, would waive and surrender their right to appeal the imposed sentence (08–cr–278, Docket No. 46, page 47).

Finally, the United States articulated its version of the facts leading up to the Defendants' arrest, *which each co-defendant expressly accepted at the plea colloquy hearing* (08–cr–278, Docket No. 46, page 48). The Court reiterates that each co-defendant explicitly stated in open court that the United States' presentation of the facts were true. Further, the Defendants admitted that they knowingly committed the charged offenses (08–cr278, Docket No. 46, page 49).

On October 31, 2008, all Defendants, including Petitioner Espinal–Gutierrez, entered a plea of guilty as to both counts (08–cr–0278, Docket No. 34; 08–cr–278, Docket No. 46, page 50). Petitioner was sentenced on the same day and received the statutory minimum sentence of sixty months for each count, which he is serving consecutively (08–cr–0278, Docket No. 35).

### B. Habeas Corpus Procedural Background

Presently pending before the Court is Petitioner's writ of habeas corpus under 28 U.S.C. § 2255 filed on November 3, 2009 (Docket No. 1). Therein, Petitioner does not challenge count 1, the substantive drug count, but only challenges the second count, possession of a firearm in connection with a drug trafficking crime. Regarding the second count, Petitioner Espinal–Gutierrez alleges that his prior counsel in 08–cr–278 was ineffective when he erroneously advised Petitioner to enter into a plea agreement and waive his right to appeal. Petitioner claims that his counsel failed to inform him that the plea agreement contained statements that Petitioner admitted to being in possession of a firearm as well as other facts. Petitioner states that "[b]ut for counsel[']s ineffective coercive advice, and fail[ing] to tell him about the false allegations contained in the plea agreement, he would not have waived his right to appeal and would not have signed a plea agreement containing statements that he adopts the government[']s statement of facts." (Docket No. 1, page 4). Additionally, Petitioner advances that there were three men on the vessel and that they were not charged with or convicted of a conspiracy charge; hence, Petitioner asserts that all three men cannot be charged with count two, the weapons charge. Petitioner also notes that his fingerprints were not found on the gun and that the United States found him only to be a minor participant. Lastly, Petitioner avers that he has a fourth grade education and does not know English.

On February 17, 2010, the Government opposed Petitioner's § 2255 motion (Docket No. 5). Therein, the Government submits that Petitioner's claim are contrary to the record developed in open court when Petitioner made his plea. Further, the

Government asserts that Petitioner had ample opportunities to reject the plea agreement, but decided to accept the agreement due to the benefits he derived from it.

On April 12, 2010, Petitioner Espinal–Gutierrez filed a reply to the Government's opposition (Docket No. 7). Therein, Petitioner reiterates his claims of ineffective assistance of counsel and adamantly requests an evidentiary hearing.

On February 8, 2012, the Court directed the Clerk of the Court to refer the instant matter to Magistrate Judge Justo Arenas for his *Report and Recommendation* (Docket No. 9).

On February 13, 2012, Magistrate Judge Arenas submitted a *Report and Recommendation* to the Court (Docket No. 11). The Magistrate Judge determined that Petitioner's assertions of ineffective assistance of counsel were totally belied by the record and thus recommended that Petitioner's § 2255 motion be denied without an evidentiary hearing. Magistrate Judge Arenas stated:

> If I compare his representation in the memoranda with his testimony at the change of plea hearing and sentencing hearing, I am faced with stark contradictions notwithstanding his argument to the contrary. If I give weight to his present allegations, then I must believe that he lied to the court in answering questions. The argument appears to be that nothing happened the way it appeared to happen. Petitioner actually received the most favorable sentence under the circumstances and it difficult to envision the prejudice in outcome. Each page of the plea agreement is initialed by petitioner. Judges have a right to rely on the words and representation of defendants who plea guilty before them. If one compares the representations in court and in the memoranda, there appears no credible evidence to support

the petitioner's claim that his attorney's representation fell below an objective standard of reasonableness, nor does the record support that but for the alleged errors by the attorney, petitioner instead of pleading guilty would have proceeded to trial, or stood fast for a more favorable plea offer. Indeed, petitioner does not announce that he wishes to withdraw his guilty plea but rather wishes an evidentiary hearing and for the court to resentence him, vacating the mandatory consecutive firearm conviction. (Docket No. 1 at 13.)

(Docket No. 11, pages 10–11).

To date, neither Petitioner nor Respondent have filed an opposition to the *Report and Recommendation.*

## II. Referring Dispositive Motions to a U.S. Magistrate Judge

The District Court may refer dispositive motions to a United States Magistrate Judge for a Report and Recommendation. 28 U.S.C. § 636(b)(1)(B) (1993); FED. R.CIV.P. 72(b); Rule 72(a), Local Rules, District of Puerto Rico; *Mathews v. Weber*, 423 U.S. 261, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976). An adversely affected party may contest the Magistrate Judge's Report and Recommendation by filing its objections within fourteen (14) days after being served a copy thereof. *See* Local Rule 72(d); FED.R.CIV.P. 72(b). Moreover, 28 U.S.C. § 636(b)(1) (2009), in pertinent part, provides that:

> [w]ithin fourteen days of being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. **A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.** A judge of the court may accept, reject, or modify, in whole or in part, the

findings or recommendations made by the magistrate.
(emphasis added).

 "Absent objection ... [a] district court has a right to assume that [the affected party] agree[s] to the magistrate's recommendation." *Templeman v. Chris Craft Corp.*, 770 F.2d 245, 247 (1st Cir. 1985), cert. denied, 474 U.S. 1021, 106 S.Ct. 571, 88 L.Ed.2d 556 (1985). Moreover, "failure to raise objections to the Report and Recommendation waives that party's right to review in the district court and those claims not preserved by such objections are precluded on appeal." *Davet v. Maccarone*, 973 F.2d 22, 30–31 (1st Cir.1992); *see also Sands v. Ridefilm Corp.*, 212 F.3d 657, 663 (1st Cir.2000); *see also Henley Drilling Co. v. McGee*, 36 F.3d 143, 150–151 (1st Cir.1994) (holding that objections are required when challenging findings actually set out in magistrate's recommendation, as well as magistrate's failure to make additional findings); *see also Lewry v. Town of Standish*, 984 F.2d 25, 27 (1st Cir.1993) (stating that "[o]bjection to a magistrate's report preserves only those objections that are specified"); *see also Keating v. Secretary of H.H.S.*, 848 F.2d 271, 275 (1st Cir.1988); *see also Borden v. Secretary of H.H.S.*, 836 F.2d 4, 6 (1st Cir.1987) (holding that appellant was entitled to a *de novo* review, "however he was not entitled to a de novo review of an argument never raised"); *see also United States v. Valencia–Copete*, 792 F.2d 4, 6 (1st Cir.1986); *see also Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 605 (1st Cir.1980).

 In the instant case, neither party filed an opposition to Magistrate Judge Arenas' *Report and Recommendation.* As no objections to the Magistrate's *Report and Recommendation* were filed, the Court, in order to accept the unopposed *Report and Recommendation*, needs only satisfy itself that the *Report and Recom-*

*mendation* contains no "plain error" on the face of the record. *See Douglass v. United Servs. Auto, Ass'n*, 79 F.3d 1415, 1419 (5th Cir., 1996)(en banc)(extending the deferential "plain error" standard of review to the unobjected-to legal conclusions of a magistrate judge); *see also Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir., 1982)(en banc)(appeal from district court's acceptance of unobjected-to findings of magistrate judge reviewed for "plain error"); *see also Nogueras–Cartagena v. United States*, 172 F.Supp.2d 296, 305 (D.P.R.2001)("Court reviews [unopposed] Magistrate's *Report and Recommendation* to ascertain whether or not the Magistrate Judge's recommendation was clearly erroneous")(adopting the Advisory Committee note regarding Fed.R.Civ.P. 72(b)); *see also Garcia v. I.N.S.*, 733 F.Supp. 1554, 1555 (M.D.Pa., 1990)("when no objections are filed, the district court need only review the record for plain error").

## III. Analysis

As previously explained, because the Magistrate Judge's *Report and Recommendation* is unopposed, this Court needs only ascertain that there is no "plain error" as to the Magistrate Judge's conclusions, in order to adopt the same. After a careful analysis, the Court finds no such "plain error" and agrees with the Magistrate Judge's conclusions. The Court would have reached the same decision even if the Petitioner had objected to the *Report and Recommendation.* Thus, the Court **ACCEPTS, ADOPTS and INCORPORATES** by reference the Magistrate's *Report and Recommendation* (Docket No. 11) to the instant *Opinion and Order.* The Court briefly explains below.

 The Court wholeheartedly agrees with Magistrate Judge Arenas' determination that Petitioner can not demonstrate that his counsel's performance fell below

an objective standard of reasonableness; nor can Petitioner demonstrate that but for counsel's alleged errors, Petitioner would have elected to wait for a better plea agreement or proceeded to trial. Thus, Petitioner fails to satisfy the applicable *Strickland* test. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).[2]

The Court additionally concurs with the Magistrate Judge Arenas' finding that Petitioner's plea colloquy, conducted by U.S. Magistrate Judge Marcos López, in open court, negate Petitioner's assertions (08–cr–0278, Docket No. 46). The Magistrate aptly noted that the forms Petitioner signed were read to him in his native Spanish language and an interpreter was present at the plea colloquy translating the proceedings for the Petitioner.[3] The transcript from the plea colloquy make it abundantly clear that, *inter alia*, Petitioner understood that he was pleading guilty; that he could not withdraw his plea; that he had an opportunity to discuss the plea agreement with his counsel prior to the hearing; that his counsel explained the plea agreement to him in the Spanish language; that he understood his attorney's

explanations of the nature of the plea agreement; and that Petitioner acknowledged that he understood the effect and consequence of the waiver of the appeal clause.

The Court agrees with the Magistrate that based on these clear assertions in open court, Petitioner may not now partially retract those averments when they are convenient to him. *See Lefkowitz v. Newsome*, 420 U.S. 283, 288, 95 S.Ct. 886, 43 L.Ed.2d 196 (1975) (" 'When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.' ") (quoting *Tollett v. Henderson*, 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973)); *United States v. Parrilla–Tirado*, 22 F.3d 368, 373 (1st Cir.1994)("It is the policy of the law to hold litigants to their assurances .... 'we will not permit a defendant to turn his back on his own representations to the court merely because it would suit his convenience to do so.' ") (quoting *United*

---

**2.** Under the *Strickland* test, Petitioner has the burden of showing that (1) counsel's performance fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. *Padilla v. Kentucky*, 559 U.S. 356, 130 S.Ct. 1473, 1482, 176 L.Ed.2d 284 (2010) (quoting *Strickland*, 466 U.S. at 688, 104 S.Ct. 2052); *see Argencourt v. United States*, 78 F.3d 14, 16 (1st Cir.1996); *Scarpa v. Dubois*, 38 F.3d 1, 8 (1st Cir.1994); *Lema v. U.S.*, 987 F.2d 48, 51 (1st Cir.1993); *López–Nieves v. United States*, 917 F.2d 645, 648 (1st Cir. 1990) (citing *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052). There is no doubt that *Strickland* also applies to representation outside of the trial setting, which would include plea bargains, sentence and appeal. *See Missouri v. Frye*, — U.S. —, 132 S.Ct. 1399, 182 L.Ed.2d 379 (2012); *Lafler v. Cooper*, — U.S.

—, 132 S.Ct. 1376, 182 L.Ed.2d 398 (2012); *Hill v. Lockhart*, 474 U.S. 52, 57, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985); *Bonneau v. United States*, 961 F.2d 17, 20–22 (1st Cir.1992); *United States v. Tajeddini*, 945 F.2d 458, 468–69 (1st Cir.1991)(abrogated on other grounds by *Roe v. Flores–Ortega*, 528 U.S. 470, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000)); *cf. Panzardi–Alvarez v. United States*, 879 F.2d 975, 982 (1st Cir.1989); *López–Torres v. United States*, 876 F.2d 4, 5 (1st Cir.1989) (abrogated on other grounds by *Bonneau v. United States*, 961 F.2d 17 (1st Cir.1992)).

**3.** Moreover, we concur with the Magistrate that Petitioner's assertions that he had difficult communicating with his counsel, Jason Gonzalez–Delgado, to be unfounded as the Court has first hand knowledge that Attorney Gonzalez is completely bilingual in the Spanish and English languages.

*States v. Pellerito,* 878 F.2d 1535, 1539 (1st Cir.1989)).

We further concur with the Magistrate that the weapon charge was proper given the close proximity of the weapon to the drugs. Further, all three Defendants accepted responsibility for the possession of a weapon which is authorized under the law as joint possession. *See United States v. Van Horn,* 277 F.3d 48, 56 (1st Cir.2002)("Exclusive access is not a prerequisite to possession . . . ."); *see also United States v. DeCologero,* 530 F.3d 36, 67 (1st Cir.2008)(finding joint possession of a weapon where it could be inferred that the weapons were being kept for the use of the crew as a whole and thus the defendant, as a crew member, had the same access to the weapons); *United States v. Wight,* 968 F.2d 1393, 1398 (1st Cir.1992)(finding joint constructive possession of a weapon where defendant was a passenger in the van, was in charge of the drug transaction, and the weapon was accessible to defendant in the van).

The Court is also in full agreement that the idea that mere presence is somehow inadequate, "that is, that the weapon was just there, is novel at best and underdeveloped at worst." (Docket No. 11, page 17). The Court additionally notes Petitioner's argument that there is no evidence of his fingerprints being on the AK–47. However, the Court also concludes, as did the Magistrate, that this argument is woefully underdeveloped as well and further it is contrary to acceptance of the possession of a weapon.

Finally, the Court is an agreement with Magistrate Judge Arenas that the instant matter does not necessitate the need to hold an evidentiary hearing as it is apparent from the briefing and the facts of pending controversy that Petitioner is not entitled to the requested relief of vacating, setting aside, or correcting his sentence under § 2255. *See United States v. La-*

*Bonte,* 70 F.3d 1396, 1412–1413 (1st Cir. 1995) ("A district court may dismiss a section 2255 petition without holding an evidentiary hearing if it plainly appears on the face of the pleadings that the petitioner is not entitled to the requested relief, or if the allegations, although adequate on their face, consist of no more than conclusory prognostications and perfervid rhetoric, or if the key factual averments on which the petition depends are either inherently improbable or contradicted by established facts of record."); *see also* 28 U.S.C. § 2255 (explaining that a hearing is unnecessary when the record "conclusively shows that the prisoner is entitled to no relief").

An evidentiary hearing is unnecessary in the instant matter as Petitioner accepted a waiver of appeal as to the sentence and the Court sentenced the Petitioner to exactly the amount of time which he accepted, sixty months for five kilos of cocaine (the statutory minimum) and sixty consecutive months for the weapon in furtherance of the drug charge, for a total of one hundred and twenty months. As we conclude that Magistrate Judge López properly verified and ensured that Petitioner fully understood "the waiver provisions and that he has knowingly and voluntarily elected to waive his right of appeal" during the plea colloquy, Petitioner is clearly prohibited from further challenging his sentence as he entered into a valid appeal waiver. *United States v. Gil–Quezada,* 445 F.3d 33, 36 (1st Cir.2006); *see also United States v. Torres–Oliveras,* 583 F.3d 37, 43 (1st Cir. 2009); *United States v. Borrero–Acevedo,* 533 F.3d 11 (1st Cir.2008).

## IV. *Conclusion*

For the reasons stated above, the Court determines that Magistrate Judge Arenas's *Report and Recommendation* (Docket No. 11) contains an apt and thoughtful

analysis that is devoid of plain error.[4] Consequently, the Court **ACCEPTS, ADOPTS and INCORPORATES** by reference the Magistrate's *Report and Recommendation* (Docket No. 11) to the instant *Opinion and Order.*

In the instant *Opinion and Order*, the Court merely provided further specific references to the record as to the plea agreement and plea colloquy in order to aid in a potential appeal. Further, the Court sought to clarify the issue as to joint possession of a weapon and Petitioner's waiver of appeal, which he entered at the plea agreement. Said waiver was activated when the Magistrate Judge sentenced Petitioner to the exact sentence to which he expressly agreed to in the plea agreement and plea colloquy.

As we have concluded that Petitioner does not satisfy the applicable *Strickland* test for ineffective assistance of counsel as Petitioner accepted responsibility following ample discussion and warnings as to the consequences of accepting responsibility, and that the weapon charge was justified in the instant matter, the Petitioner's motion under 28 U.S.C. § 2255 is hereby **DENIED** without the need for an evidentiary hearing. The Court further denies a certificate of appealability in the instant matter. Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

*MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION*

JUSTO ARENAS, United States Magistrate Judge.

As I stated in another report and recommendation as to a related defendant, un-like the sailors who went down to the sea in ships, as described in Psalms 107:23–30, petitioner and two co-defendants were not delivered to their desired haven, but rather were arrested on the high seas for carrying a load of cocaine and an assault rifle destined for Puerto Rico. *See United States v. AndujarAponte*, 2009 WL 5874320 (Nov. 10, 2009), report and recommendation adopted by *United States v. Andujar–Aponte*, 2010 WL 597483 (February 10, 2010). On July 31, 2008, petitioner Gregorio Espinal Gutierrez and two other defendants were charged in a two-count information with aiding and abetting each other in knowingly and intentionally possessing with intent to distribute five hundred grams or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II Narcotic Drug Controlled Substance, on board a vessel subject to the jurisdiction of the United States, that is, a vessel in the contiguous zone of the United States, that is, a hovering vessel, as defined in Title 46, United States Code, Section 70502(c)(1)(F)(iii). The District of Puerto Rico was the first point where the defendants entered the United States after the commission of the offense. All in violation of Title 46 United States Code Sections 70503(a)(1), 70504(b)(1) and Title 18, United States Code § 2. Count Two charged the three defendants with aiding and abetting each other in knowingly possessing a firearm, that is, an AK–47 assault rifle, during and in relation to a drug trafficking crime for which for which they may be prosecuted in a Court of the United States, to wit: possession with intent to distribute five hundred grams or more of a mixture or substance containing a detectable amount of

---

**4.** The Court greatly appreciates Magistrate Judge Arenas' particularly thorough and stellar *Report and Recommendation.* Accordingly, the Court need not go further "[w]here, as here, a [Magistrate] has produced a first-rate work product, a reviewing tribunal should hesitate to wax longiloquence simply to hear its own words resonate." *In re San Juan Dupont Plaza Hotel Fire Litig.*, 989 F.2d 36, 38 (1st Cir.1993).

cocaine, a Schedule II Narcotic Drug Controlled Substance, on board a vessel subject to the jurisdiction of the United States. In violation of Title 18 United States Code Section 924(c)(1)(a) and Title 18 United States Code Section 2. (Criminal 08–0278(DRD), Docket No. 4.)

Petitioner entered a plea of guilty on the same day and was sentenced on October 31, 2008 to a total of 120 months imprisonment, the statutory minimum allowed by law. (Criminal 08–0278(DRD), Docket Nos. 334, 35). No appeal was taken from the judgment which was entered on the docket November 3, 2008. (Criminal 08–0278(DRD), Docket No. 35.) [1]

This matter is before the court on timely motion filed by petitioner Gregorio Espinal Gutierrez on November 3, 2009 to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255. (Docket No. 1.) The government filed a response in opposition to the motion on February 17, 2010. (Docket No. 5.) Petitioner filed a reply to the response on April 12, 2010. (Docket No. 7.) The matter was referred to me for report and recommendation on February 8, 2012. (Docket No. 9).

Having considered the arguments of the parties and for the reasons set forth below, I recommend that the petitioner's motion to vacate sentence be DENIED.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Petitioner and two others were arrested aboard a vessel off the coast of Desecheo Island, which vessel was navigating without lights traveling north toward Puerto Rico. The vessel was intercepted on April 16, 2008 by U.S. Customs and Border Protection Marine Units. Six bales containing a total of 174 brick-shaped packages containing cocaine were found aboard the vessel, together with an AK–47 assault rifle. The vessel apparently originated in the Dominican Republic. (Criminal 08–0278(DRD), Docket No. 14.) A complaint was filed on April 17, 2008 (08–0252m–BJM, Docket No. 1). The U.S. magistrate judge found probable cause after a preliminary hearing held on May 1, 2008. (08–0252m–BJM, Docket No. 1). Petitioner was ordered detained pending trial. Petitioner was then indicted by a grand jury of this court in a four-count indictment charging two conspiracy counts and two substantive counts. (Criminal 08–0180(DRD), Docket No. 25). Petitioner waived indictment on July 31, 2008. (Criminal 08–0278(DRD), Docket No. 2.) Petitioner then entered a guilty plea to the information based upon a plea agreement signed by petitioner on the same day. (Criminal 08–0278(DRD), Docket Nos. 10, 15.) The indictment was dismissed on November 12, 2008. (Criminal 08–0180(DRD), Docket No. 58.)

On November 3, 2009, petitioner Gregorio Espinal Gutierrez filed a motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255. (Docket No. 1.) Petitioner claims that he suffered ineffective assistance of counsel since his waiver of appeal was not voluntary or knowing and his attorney gave him erroneous advice and coerced him into signing the plea agreement, particularly since the presentence investigation report contained statements alleging that petitioner admitted to

---

1. Petitioner and the Court will again note that there are similarities among three motions to vacate sentence filed by the defendants in (Crim. No. 08–278–DRD). See Docket Nos. 41, 44, 51. Because of those similarities and because it is my desire that petitioners, who are located in the same federal correctional facility, not receive condensed recommendations adopting or referring to any previous recommendations, a comparison of my report and recommendations will reveal much repetition of facts, legal principles and citations where applicable.

possession of a firearm. Were it not for counsel's ineffective and coercive advice, petitioner would not have waived his right to appeal and would not have signed the plea agreement containing facts which were adopted from the government's statement of facts. (Docket No. 1. He argues that he was a minor participant and that the mere presence of a firearm in an area where a criminal act occurs is not sufficient to impose a mandatory sentence). He notes there was no conspiracy (Two conspiracy charges by way of indictment were dismissed in favor of the information.) They cannot all be charged with the gun. There were no fingerprints on the gun. He also argues that he has a fourth grade education and cannot read English so that his waiver was not knowingly and voluntarily made.

On February 17, 2010, the government filed a response in opposition to the petitioner's motion. The government responds to the merits of petitioner's motion, quoting extensively from the Change of Plea hearing in relation to the waiver of appeal condition of the plea agreement as well as the issue of consecutive sentences. The government argues that petitioner's claims are conclusory and without one reference to the record. *See Cody v. United States*, 249 F.3d 47, 53 n. 6 (1st Cir.2001). It stresses that the petitioner cannot argue something that is totally contradicted by the record and the colloquy between the petitioner and the court. The government also notes the benefit derived by petitioner in relation to the sentence he could have received without the agreement.

Petitioner filed a reply to the response on April 12, 2010 (Docket No. 7). He asks for an evidentiary hearing. He argues that he never received adequate advice from his attorney since he did not speak English. This might be a commonplace argument in other jurisdictions but in Puerto Rico, where English is a second language for most people and attorneys, including the three involved in the criminal case, the statement of petitioner is at best confusing. He also states that he did not have the benefit of a translator during the signing of the plea agreement. Because these are allegations that occurred out of the record, petitioner insists on an evidentiary hearing. Petitioner argues that the government's statement are self serving and conclusory. Because the issues are hotly contested, petitioner seeks an evidentiary hearing.

## II. ANALYSIS

 Under 28 U.S.C. § 2255, a federal prisoner may move for post conviction relief if:

> the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack....

28 U.S.C. § 2255(a); *Hill v. United States*, 368 U.S. 424, 426–27 n. 3, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962); *David v. United States*, 134 F.3d 470, 474 (1st Cir.1998). The burden is on the petitioner to show his or her entitlement to relief under section 2255, *David v. United States*, 134 F.3d at 474, including his or her entitlement to an evidentiary hearing. *Cody v. United States*, 249 F.3d 47, 54 (1st Cir.2001) (quoting *United States v. McGill*, 11 F.3d 223, 225 (1st Cir.1993)). Petitioner emphatically seeks an evidentiary hearing. It has been held that an evidentiary hearing is not necessary if the 2255 motion is inadequate on its face or if, even though facially adequate, "is conclusively refuted as to the alleged facts by the files and records of the case." *United States v. McGill*, 11 F.3d at 226 (quoting *Moran v. Hogan*, 494 F.2d 1220, 1222 (1st Cir.1974)). "In other

words, a § 2255 motion may be denied without a hearing as to those allegations which, if accepted as true, entitle the movant to no relief, or which need not be accepted as true because they state conclusions instead of facts, contradict the record, or are 'inherently incredible.' " *United States v. McGill,* 11 F.3d at 226 (quoting *Shraiar v. United States,* 736 F.2d 817, 818 (1st Cir.1984)).

### Ineffective Assistance of Counsel

■■■ "In all criminal prosecutions, the accused shall enjoy the right to ... the Assistance of Counsel for his defence." U.S. Const. amend. 6. To establish a claim of ineffective assistance of counsel, a petitioner "must show that counsel's performance was deficient," and that the deficiency prejudiced the petitioner. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "This inquiry involves a two-part test." *Rosado v. Allen,* 482 F.Supp.2d 94, 101 (D.Mass.2007). "First, a defendant must show that, 'in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.' " *Id.* (quoting *Strickland v. Washington,* 466 U.S. at 690, 104 S.Ct. 2052.) "This evaluation of counsel's performance 'demands a fairly tolerant approach.' " *Rosado v. Allen,* 482 F.Supp.2d at 101 (quoting *Scarpa v. Dubois,* 38 F.3d 1, 8 (1st Cir.1994)). "The court must apply the performance standard 'not in hindsight, but based on what the lawyer knew, or should have known, at the time his tactical choices were made and implemented.' " *Rosado v. Allen,* 482 F.Supp.2d at 101 (quoting *United States v. Natanel,* 938 F.2d 302, 309 (1st Cir.1991)). The test includes a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Smullen v. United States,* 94 F.3d 20, 23 (1st Cir.1996) (quoting *Strickland v. Washington,* 466 U.S. at 689, 104 S.Ct. 2052).

"Second, a defendant must establish that prejudice resulted 'in consequence of counsel's blunders,' which entails 'a showing of a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." ' " *Rosado v. Allen,* 482 F.Supp.2d at 101 (quoting *Scarpa v. Dubois,* 38 F.3d at 8) (quoting *Strickland v. Washington,* 466 U.S. at 694, 104 S.Ct. 2052); *see Mattei–Albizu v. United States,* 699 F.Supp.2d 404, 407 (D.P.R.2010). However, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Argencourt v. United States,* 78 F.3d 14, 16 (1st Cir.1996) (quoting *Strickland v. Washington,* 466 U.S. at 691, 104 S.Ct. 2052). Thus, "[c]ounsel's actions are to be judged 'in light of the whole record, including the facts of the case, the trial transcript, the exhibits, and the applicable substantive law.' " *Rosado v. Allen,* 482 F.Supp.2d at 101 (quoting *Scarpa v. Dubois,* 38 F.3d at 15). The defendant bears the burden of proof for both elements of the test. *Cirilo–Muñoz v. United States,* 404 F.3d 527, 530 (1st Cir.2005), *cert. denied,* 525 U.S. 942, 119 S.Ct. 363, 142 L.Ed.2d 300 (1998), (citing *Scarpa v. Dubois,* 38 F.3d at 8–9).

■■■ In *Hill v. Lockhart* the Supreme Court applied *Strickland's* two-part test to ineffective assistance of counsel claims in the guilty plea context. *Hill v. Lockhart,* 474 U.S. 52, 58, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985) ("We hold, therefore, that the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel."). As the Hill Court explained, "[i]n the context of guilty pleas, the first half of the *Strickland v. Washington* test is nothing more than a restatement of the standard of attorney competence already

set forth in [other cases]. The second, or 'prejudice,' requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart,* 474 U.S. at 58–59, 106 S.Ct. 366. Accordingly, petitioner would have to show that there is "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59, 106 S.Ct. 366.

Petitioner emphatically seeks an evidentiary hearing. If I compare his representation in the memoranda with his testimony at the change of plea hearing and sentencing hearing, I am faced with stark contradictions notwithstanding his argument to the contrary. If I give weight to his present allegations, then I must believe that he lied to the court in answering questions. The argument appears to be that nothing happened the way it appeared to happen. Petitioner actually received the most favorable sentence under the circumstances and it difficult to envision the prejudice in outcome. Each page of the plea agreement is initialed by petitioner. Judges have a right to rely on the words and representation of defendants who plea guilty before them.

██ If one compares the representations in court and in the memoranda, there appears no credible evidence to support the petitioner's claim that his attorney's representation fell below an objective standard of reasonableness, nor does the record support that but for the alleged errors by the attorney, petitioner instead of pleading guilty would have proceeded to trial, or stood fast for a more favorable plea offer. Indeed, petitioner does not announce that he wishes to withdraw his guilty plea but rather wishes an evidentiary hearing and for the court to resentence

him, vacating the mandatory consecutive firearm conviction. (Docket No. 1 at 13.)

At the plea hearing on July 31, 2008 before United States Magistrate Judge Marcos Lopez, petitioner and both other defendants were placed under oath. (Docket No. 46 at 3.) [2] The judge explained to the three that if they did not understand a question, he would rephrase the question. Petitioner understood that. (Docket No. 46 at 3–4.) Of the three defendants, petitioner was designated to answer third. The importance of answering questions truthfully was stressed to petitioner by the judge. Petitioner was asked if he was aware of the charges in the information and if he had discussed the charges with his attorney. Petitioner said yes. He also admitted that he understood the explanation of the charges by his attorney. Petitioner noted that he was there "to plead guilty". (Docket No. 46 at 9.) He also noted that his attorney had provided effective legal representation and that he had discussed pleading guilty with his attorney. The magistrate judge conducted the traditional plea colloquy with petitioner. The forms petitioner signed were read in the Spanish language to him and an interpreter translated the proceedings simultaneously. Petitioner acknowledged that he understood that by pleading guilty, he would be found guilty and no longer presumed innocence as to both counts of the information. (Docket No. 46 at 26.) Petitioner also understood that as a non U.S. citizen, there were administrative consequences to his guilty plea, such as deportation. (Docket No. 46 at 28.) Petitioner understood that even if a maximum penalty were imposed, the plea could not be withdrawn. (Docket No. 46 at 28.) The magistrate judge was meticulous with petitioner in relation to the plea agree-

---

**2.** Docket No. 46 relates to the transcript of the change of plea hearing held on July 31, 2008 before the Honorable Marcos Lopez. (Crim No. 08–278(DRD)).

ment, making reference to the initials on the pages of the plea agreement, which initials petitioner acknowledged as his own, as well as his signature. (Docket No. 46 at 30.) Petitioner acknowledged that the plea agreement was explained to him by his attorney in the Spanish language. (Docket No. 46 at 35.) The defense attorney in court noted that the plea agreement was translated for the defendant by him. (Docket No. 46 at 33.) Petitioner also acknowledged having a reasonable opportunity, **prior to the hearing,** to discuss all the terms and conditions of this plea agreement with his attorney, and was able to understand his attorney's explanations as to the terms and conditions of the plea agreement. (Docket No. 46 at 35.) The prosecutor announced that the plea was a package deal but the magistrate judge informed the three defendants that if they felt they were innocent, they should not be pleading guilty simply because the other two are pleading guilty. The three understood that. (Docket No. 46 at 36.) Petitioner answered "Yes, sir" to the following question: "Am I to understand, then, that you're pleading guilty voluntarily and willingly because you honestly believe and that you are guilty of the two offenses charged in the information?" (Docket No. 46 at 38.) Petitioner was also asked if he had been threatened, coerced or forced into entering a guilty plea. He answered No. (Docket No. 46 at 38.)

Again, the judge meticulously read each count separately and asked petitioner as to both if this is one of the charges he was pleading guilty to. The magistrate judge then asked, "Do you understand that the Court must impose the penalty as to count two consecutively to the penalty on count one?" Petitioner and the other two defendants answered "Yes". (Docket No. 46 at 42.) Petitioner understood the explanation of the Sentencing Guidelines and understood that the Court could not sentence

below the statutory minimum. (Docket No. 46 at 45.)

The magistrate judge explained the waiver of appeal clause and petition and the others acknowledged understanding the consequences of the waiver of appeal clause. (Docket No. 46 at 47.) Petitioner accepted the version of facts outlined by the prosecutor, including the possession of the cocaine and AK–47 assault rifle. (Docket No. 46 at 48–49.) Petitioner then admitted committing the offenses charged. (Docket No. 46 at 50.) Petitioner pleaded guilty as to both counts one and two. (Docket No. 46 at 51.)

■■■ Having related the proceedings before the magistrate judge, I note that "[w]hen a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Lefkowitz v. Newsome,* 420 U.S. 283, 288, 95 S.Ct. 886, 43 L.Ed.2d 196 (1975) (quoting *Tollett v. Henderson,* 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973)); *see Nieves–Ramos v. United States,* 430 F.Supp.2d 38, 43 (D.P.R.2006); *Caraballo Terán v. United States,* 975 F.Supp. 129, 134 (D.P.R. 1997).

Just as the other two defendants, petitioner overlooks the fact that his attorney negotiated a favorable plea agreement with the government, and if one considers what sentence he might have received after trial or after a straight plea, particularly in a case involving a an assault rifle (which carries a maximum sentence of life imprisonment), and a huge amount of cocaine, substantially reduced for purposes of accountability, petitioner could have faced three times his sentence or more, just like the other two defendants who accepted the plea offer. The government

conceded that the three defendants were mules in the enterprise.

 It is well settled that a court "will not permit a defendant to turn his back on his own representations to the court merely because it would suit his convenience to do so." *United States v. Parrilla–Tirado,* 22 F.3d 368, 373 (1st Cir. 1994) (quoting *United States v. Pellerito,* 878 F.2d 1535, 1539 (1st Cir.1989)). "[I]t is the policy of the law to hold litigants to their assurances at a plea colloquy." *Torres–Quiles v. United States,* 379 F.Supp.2d 241, 248–49 (D.P.R.2005) (citing *United States v. Marrero–Rivera,* 124 F.3d 342, 349 (1st Cir.1997)). Thus, the petitioner "should not be heard to controvert his Rule 11 statements ... unless he [has] offer[ed] a valid reason why he should be permitted to depart from the apparent truth of his earlier statement[s]." *United States v. Butt,* 731 F.2d 75, 80 (1st Cir. 1984). "[T]he presumption of truthfulness of the Rule 11 statements will not be overcome unless the allegations in the § 2255 motion are sufficient to state a claim of ineffective assistance of counsel and include credible, valid reasons why a departure from those earlier contradictory statements is now justified." *United States v. Butt,* 731 F.2d at 80 (citing *Crawford v. United States,* 519 F.2d 347, 350 (4th Cir. 1975)). The Supreme Court has noted that in the context of a challenged representation, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable...." *Strickland v. Washington,* 466 U.S. at 690, 104 S.Ct. 2052. Because of the wide range of tactical decisions that a criminal defense attorney may be presented with in any given trial, judicial scrutiny of the attorney's performance must be "highly deferential" and indulge a strong presumption that the challenged action "might be considered sound trial strategy." *Id.* at 689, 104 S.Ct. 2052. Indeed, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effect of hindsight...." *Id.*

 In relation to a motion to vacate sentence, ordinarily the court would have to "take petitioner's factual allegations 'as true,'" however it will not have to do so when like in this case "'they are contradicted by the record ... and to the extent that they are merely conclusions rather than statements of fact.'" *Otero–Rivera v. United States,* 494 F.2d 900, 902 (1st Cir. 1974) (quoting *Domenica v. United States,* 292 F.2d 483, 484 (1st Cir.1961)).

 Finally, the court also took into account the fact that the petitioner had accepted responsibility for his criminal conduct in a timely manner, therefore granting him a three-level reduction. He was also given a 2–level reduction for mitigating role. In any event, regardless of role, the defendants could not have been sentenced below the statutory minimum and the government could not be blindfolded to their possession of an AK–47 during and in furtherance of the drug enterprise. The government also acknowledged facts beneficial to petitioner when it could have been less munificent. All three defendants received the same sentence. All three have filed similar motions to vacate sentence. Petitioner argues that the mere presence of a firearm in an area where a criminal act occurs is not sufficient to impose a mandatory sentence. He argues that the three cannot all be charged with the gun and that there no fingerprints on the gun. It is true that mere presence alone is generally insufficient proof of a person's participation in a crime. *See United States v. Perez–Melendez,* 599 F.3d 31, 40–41 (1st Cir.2010); *United States v. Angulo–Hernandez,* 565 F.3d 2, 7 (1st Cir. 2009.); *United States v. Downs–Moses,* 329 F.3d 253, 261 (1st Cir.2003). The mere presence or lack thereof refers to

persons, not to things, such as an AK–47. If petitioner's argument were to be that he was merely present on a boat, at night, on the high seas, with no running lights, loaded with bales of cocaine, crewed by three people, one of whom may have had actual possession or ownership of the weapon, but three of which may or may not have had constructive possession of the weapon, then he could have presented this scenario to a jury. He chose to reap the benefits of a favorable plea agreement under the circumstances, and illuminated by the brightness of hindsight, decided that he should be disassociated with the AK–47 altogether. It was enough to show that the weapon, a large and heavy AK–47, was in close proximity to the drugs in question. *See e.g. United States v. Are*, 590 F.3d 499, 526 (7th Cir.2009). The idea of mere presence, that is, that the weapon was just there, is novel at best and undeveloped at worst. The fingerprint argument is not a theme. It is undeveloped. It is clear then that the petitioner was adequately represented by his counsel and that his allegations are meritless.

## III. CONCLUSION

▮ "Under *Strickland v. Washington*, ... counsel is not incompetent merely because he may not be perfect. In real life, there is room not only for differences in judgment but even for mistakes, which are almost inevitable in a trial setting, so long as their quality or quantity do not mark out counsel as incompetent." *Arroyo v. United States*, 195 F.3d 54, 55 (1st Cir.1999). Petitioner has not satisfied the first prong of *Strickland*. The arguably inadequate and poor performance of his attorney did not contribute to the ultimate outcome of the criminal case. There were no errors of defense counsel that resulted in a violation of petitioner's right to adequate representation of counsel under the Sixth Amendment. There is no basis for petitioner's undeveloped argu-

ment and there is no basis for the also undeveloped waiver of appeal argument. It is undeveloped and conclusory because, just as in a companion case, it flies in the face of petitioner's own representations made under oath in this court. It is a settled rule that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *Nikijuluw v. Gonzales*, 427 F.3d 115, 120 n. 3 (1st Cir.2005); *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir.1990).

In view of the above, I find that petitioner Gregorio Espinal Gutierrez has failed to establish that his counsel's representation fell below an objective standard of reasonableness. *See Strickland v. Washington*, 466 U.S. at 686–87, 104 S.Ct. 2052; *United States v. Downs–Moses*, 329 F.3d at 265. Furthermore, even if petitioner had succeeded in showing deficiencies in his legal representation, he is unable to establish that said deficiencies resulted in a prejudice against him in the criminal proceedings. *See Owens v. United States*, 483 F.3d 48, 63 (1st Cir.2007) (quoting *Strickland v. Washington*, 466 U.S. at 687–88, 104 S.Ct. 2052). It is impossible to find that any claimed error has produced 'a fundamental defect which inherently results in a complete miscarriage of justice' or 'an omission inconsistent with the rudimentary demands of fair procedure.' *Knight v. United States*, 37 F.3d 769, 772 (1st Cir.1994) (quoting *Hill v. United States*, 368 U.S. at 428, 82 S.Ct. 468). Infid that petitioner's motion under 2255 is meritless. In view of the above, I recommend that petitioner's motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 be DENIED without evidentiary hearing.

Under the provisions of Rule 72(d), Local Rules, District of Puerto Rico, any party who objects to this report and rec-

ommendation must file a written objection thereto with the Clerk of this Court within fourteen (14) days of the party's receipt of this report and recommendation. The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections. Failure to comply with this rule precludes further appellate review. *See Thomas v. Arn,* 474 U.S. 140, 155, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Davet v. Maccarone,* 973 F.2d 22, 30–31 (1st Cir.1992); *Paterson–Leitch Co. v. Mass. Mun. Wholesale Elec. Co.,* 840 F.2d 985 (1st Cir.1988); *Borden v. Sec'y of Health & Human Servs.,* 836 F.2d 4, 6 (1st Cir.1987); *Scott v. Schweiker,* 702 F.2d 13, 14 (1st Cir.1983); *United States v. Vega,* 678 F.2d 376, 378–79 (1st Cir.1982); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603 (1st Cir.1980).

February 13, 2012.